# CHARLESTON

## WALTON *v.* KNIGHT *et al.*

Submitted March 6, 1907.   Decided May 22, 1907.

62    223
66    275

1. EASEMENTS—*Right of Way—Prescription.*

   A private right of way by prescription may be acquired over another's land by visible, continuous and uninterrupted use thereof for ten years, under a *bona fide* claim of right, with the acquiescence of the owner.   (p. 224.)

2. SAME—*Acquiescence of Owner—Presumption.*

   Such use is presumed to be with the knowledge and acquiescence of the owner and to *prima facie* give the right; which presumption will be conclusive, unless accompanied by the protest and objection of the owner under such circumstances as to repel it.   (p. 224.)

3. SAME—*Bona Fides.*

   When there has been such use of another's land for the period requisite to create an easement by prescription, the *bona fides* of the claim of right is established.   (p. 227.)

4. SAME—*Unenclosed Land.*

   Such right of way may be acquired as well over unenclosed and uncultivated land as over land enclosed by visible fence.   (p. 228.)

5. SAME—*Route—Deviations.*

   While, as a general rule, the right thus acquired must be confined to one definite route between the said termini, such right will not be lost by occasional deviations from this route to avoid muddy or worn places.   (p. 230.)

Appeal from Circuit Court, Greenbrier County.

Suit by Minnie M. Walton against James Knight and others.   From a decree in favor of plaintiff, defendants appeal.

*Affirmed.*

JOHN W. ARBUCKLE, for appellant.

WILLIAMS & DICE, for appellee.

MILLER, JUDGE:

The parties plaintiff and defendants own contiguous tracts of land in Greenbrier county, each consisting of about 400

acres, parts of an original survey of 800 acres, both traversed by Spring Creek; the plaintiff's land being the part lying back of that owned by the defendants, whose land lies between that of the plaintiff and the county road. The land owned by the defendants passed from William Hanna, the original patentee of the 800 acres, to Albert Hanna, who in December, 1849, conveyed the same to Andrew McCoy, who in October, 1855, conveyed it to Andrew Knight, the father of the defendants.

The bill alleges, and the answer denies, that the plaintiff owns a right of way as appurtenant to her farm over a portion of the land of the defendants about three hundred yards in length, passing from the west side of her land down the northern side of Spring Creek a short distance, thence across said creek to intersect the public road leading from Dry Run to Falling Spring; that she and those under whom she claims have used said way for travel by vehicles, hauling, walking and riding for at least thirty-five years prior to the institution of this suit, continuously uninterruptedly and adversely, without obstruction or permission from any one; that it is the only practicable way she has for travel from said farm to the public road; that within the past few months the defendants have caused said right of way to be ploughed up and fence posts to be set in the ground across the same for the purpose of completely obstructing it; and she prays for an injunction and for general relief.

It has been held by this Court that such a right of way may be acquired by grant express or implied, or by prescription; that a private right of way may be acquired by prescription by the visible, continuous and uninterrupted use thereof for twenty years under a *bona fide* claim of right. *Boyd* v. *Woolwine*, 40 W. Va. 283; *Rogerson* v. *Shepherd*, 33 W. Va. 307. To the same effect are *Stokes* v. *Appomatox Co.*, 3 Leigh 318; *Coalter* v. *Hunter*, 4 Rand. 858. In *Wooldridge* v. *Coughlin*, 46 W. Va. 345, this Court held that the use of a private way for ten years with the acquiescence of the owner will confer a right thereto unless denied; that such user is without more taken to be with his acquiescence and knowledge, and *prima facie* gives the right; but that if it appears that the user is against his protest and he denies the right, it can not become vested from time of

user;—citing *Field* v. *Brown*, 24 Grat. 74; *Nichols* v. *Ayler*, 7 Leigh 546; Washb. Easem. 86, 111. In *Worrall* v. *Rhoads*, 2 Whart. 427, it is said a grant of a right of way will be presumed from the uninterrupted enjoyment thereof for twenty-one years, and that such presumption applies to a way over unenclosed land whether clear or woodland. In *Garrett* v. *Jackson*, 20 Pa. St. 331, it is held that where one uses a road whenever he chooses over the land of another, without leave or objection, the use is adverse, and, if uninterrupted for twenty-one years, gives an indisputable title to that enjoyment; that such enjoyment, without evidence as to how it began, is presumed to have been in pursuance of a grant, and the burden of showing the contrary lies on the owner of the land.

Some confusion may arise from the language used in our decisions as to the time required to establish title to a way by prescription. In *Boyd* v. *Woolwine*, *supra*, it is held to be twenty years; but in *Wooldridge* v. *Coughlin*, *supra*, ten years. The natural inquiry is, why this difference, and what is the time essential? It is evident, from the authorities cited, that the court was referring in the former case to the common-law rule, and in the latter to our present statute of limitations. "By judicial construction an adverse user of an easement for the period mentioned in the statutes (of limitations), as they were passed from time to time, became evidence of a prescriptive right." Jones Easem., 1 section 161; *Railroad Co.* v. *McFarlan*, 43 N. J. L. 605, 617. "Such adverse user must have existed for a period equal at least to that prescribed by the statute of limitations for acquiring title to land by adverse possession." Jones Easem. section 164. In *Lucas* v. *Turnpike Co.*, 36 W. Va. 427, 437, the Court quotes with apparent approval Goddard on Easements: "Without minutely stating here the local statutes of limitations as to adverse user, it may be safely asserted that no less period will suffice, and no greater will be required, in fixing the requisite length of enjoyment to gain a right to an easement in land by prescription than to acquire the land itself by adverse occupation. This element of duration is therefore comparatively simple."

What is the nature of this presumption of title arising from such use of another's land. is a question about which there

has been a diversity of opinion. It is generally supposed to rest upon the fiction of a lost grant; not, however, because even the court or a jury is to believe the presumed grant, but because public policy and convenience require that such long-continued use be not disturbed. Jones on Easem., section 161, says that fiction of a lost grant seems to have been originally invented to avoid the rule of pleading requiring profert—quoting from *Railroad Co.* v. *McFarlan, supra.* Jones says (section 162): "The weight of authority is that such presumption is conclusive, as a matter of law, that the use of the easement was adverse and under a claim of right, in the absence of circumstances indicating the contrary, and moreover such enjoyment of the right affords a conclusive presumption of the right." And, quoting from *Railroad Co.* v. *McFarlan,* Jones says in the same section: "When the fiction of a lost grant was devised, there arose considerable diversity and fluctuation in judicial opinions as to whether an uninterrupted user for the period of limitation conferred a legal right, or raised merely a presumption of title which would stand good until the presumption was overcome by evidence which negatived in the judgment of juries the existence of a grant. This state of the law produced great insecurity of titles by prescription, and subjected rights to the whim and caprice of juries. This evil was remedied by the later English authorities which gave to the presumption of title arising from an uninterrupted enjoyment of twenty years the most unshaken stability, and made it conclusive evidence of a right. * * * In this country the prevailing doctrine is, that an exclusive and uninterrupted enjoyment for twenty years creates a presumption *juris et de jure,* and is conclusive evidence of title whenever, by possibility, a right may be acquired by grant.

But this Court, in its decisions above referred to, and the court of Virginia seem committed to the doctrine that such user for the statutory period raises only a *prima facie* presumption of a grant which may be repelled. JUDGE BRANNON in *Wooldridge* v. *Coughlin, supra,* says: "The flight of the long time requisite to vest the right under the old law afforded a conclusive presumption that there had been an express grant of the easement, its evidence lost by

the tooth of time, and no proof that it never existed could be heard; whereas, under the new rule, user for the statutory period raises only a *prima facie* presumption of a grant, which may be repelled, * * * To establish a right of way under the modern law, it must appear that it has been exercised for the statutory period, with the acquiescence of the owner over whose land the way is claimed"—citing the Virginia cases.

The test of our decisions seem to be that the use must be visible, continuous and uninterrupted for the statutory period, under a *bona fide* claim of right. We may inquire, what is such *bona fide* claim of right? In *Eells* v. *Railroad Co.*, 49 W. Va. 65, 69, it is indicated that such right may originate and have its commencement in trespass. In *Garrett* v. *Jackson, supra*, it is said that passage by one over land of another, with special permission of the owner on every occasion, will not raise the presumption of a grant, no matter how often it may occur or how long continued; but that use of an easement at pleasure, without leave or objection, is adverse, and if uninterrupted for twenty-one years gives indisputable title. In *Worrall* v. *Rhoads*, 2 Whart. 427, it is said: "In the absence of evidence tending to show that such long-continued use of the way may be referred to a license, or other special indulgence that is either revocable or terminable, the conclusion is that it has grown out of a grant by the owner of the land, and has been exercised under a title thus derived; the law favors this conclusion, because it will not presume any man's act to be illegal. It is also reasonable to suppose that the owner of the land would not have acquiesced in such enjoyment for so long a period, when it was his interest to have interrupted it, unless he felt conscious that the party enjoying it had a right and a title to it that could and ought not to be defeated. And, besides, seeing it can work no prejudice to any one excepting to him who has been guilty of great negligence, to say the least of it, public policy and convenience require that this presumption should be made, in order to promote the public peace and quiet men in their possession." Whenever therefore there has been such use for a long period, the *bona fides* of the claim of right is established, and the owner of the servient estate must rebut the presumption of right, by showing

leave or license from him, or protest and objection under such circumstances as to repel the presumption.

It is conceded by the defendants here that the plaintiff and her predecessors have used a way over their land, though with some variation, continuously for more than thirty-five years; but they combat the presumption of right upon three different grounds.

First, they claim that prior to the civil war their land over which the way is claimed was enclosed by fence and cultivated; that prior to that time the owner of the plaintiff's land used the creek bed as a right of way. But this does not account for the subsequent use, nor defeat the present claim. That during the war the fences were torn down and the land thrown out into the common and traveled over by the owners of plaintiff's land and others, is no sufficient defense to her claim of right. In *Worrall* v. *Rhoads, supra,* the supreme court of Pennsylvania says that "there seems to be no reason for making any distinction between the legal effect of a person occupying for the space of twenty-one years a way over the clear land of another which is enclosed by a visible fence, and his clear or woodland that is unenclosed or enclosed merely by an ideal one; for all are considered as enclosed by the law, and the owner is entitled to be protected in the quiet, exclusive and undisturbed enjoyment of the latter description of land as much and to as great extent as in that of the former. * * * Such an occupation of a way over either is equally opposed to the absolute right and dominion of the owner over his land." And in Jones on Easem., section 297, the author says: "Such an easement may as well be exercised over an open and uncultivated field as upon one substantially enclosed and usually cultivated. Indeed, enclosure and cultivation would most likely be derogatory to the free exercise of a right of way."

Second, an attempt is made to show that such use of defendants' land was permissive, for the accommodation of the plaintiff and those who preceded her; but the evidence is entirely wanting of any proof of such permission. The bill alleges continuous, uninterrupted and adverse use without any obstruction or permission. The defendants in their answers say such use was not under any claim of an ease-

ment over their land, but was a matter of sufférance by them and those under whom they claim.    The answer does not say it was a permissive use, nor that there was a leave or license given, or any interruption or objection by them or their predecessors.    R. E. Hanna, a witness for the plaintiff, resided with his father, Albert Hanna, on the plaintiff's land from about 1853 to 1872.    He says he has known the way in controversy for at least forty years.    He further says:  "We hauled over it some and we traveled over it horseback and afoot and any way we had to travel.    We traveled over it in all the ways that people travel over a road;" that he has been over the road recently, and thinks it is about the same place it was when he lived there; that neither his father nor any member of his family to his knowledge ever asked permission of any one to use said road.    H. W. Knight, another witness for the plaintiff, who lived on and had charge of the defendants' land from 1876 until 1903, gives testimony to the continued use of this way by the plaintiff and her predecessors during that time, substantially on its present location.    He says: "No change with one exception; there was a mud hole formed in a low place in the bottom; in order to get around that mud hole some one broke a track through the elders for a short distance round the mud hole and back to the orginal track again."    There is much other testimony of the same character.    Opposed to this testimony of the plaintiff's witnesses the defendants offer James C. McCoy, who says he lived on the land owned by the defendants with his father in 1849 or 1850; for how long he does not definitely state, but the record shows that his father conveyed this land to Andrew Knight October 26, 1855.    He says when his father owned the defendant's land he had it enclosed and cultivated it in corn.    He gives no testimony as to any permission by his father to use the right of way.    This witness was employed by the defendants as surveyor to make a plat of the different ways they claim were used over their land by the plaintiff and others.    When asked on cross-examination how long he had known the road claimed by the plaintiff to have been used by the owners and occupiers of the Walton land, he says:  "I left the Knight farm when I was about thirteen years old, and it was several years after we left there before

I was back there, and I did not pay any attention to the roads. Since the war that road has been traveled up through the bottom there;" and he admitted that he had traveled this road himself in going to the Walton house from the public road. There is absolutely no proof of any permissive right, or of objection or protest by the defendants or by former owners of their lands. Jones on Easem., section 283, lays down the rule that a right of way may be acquired by prescription, although the use began under a mere license or verbal consent, provided the other requisites of a prescriptive right exist; that is, the user must have been exercised under a claim of right for the full prescriptive period, with the knowledge and acquiescence of the owner of the servient estate, under circumstances showing the user to be adverse.

Third, the defense is made that the way over of the defendants' land was not confined to any one particular route, and no defined and exclusive way was acquired. There was evidence showing occasional use of the creek bottom; that occasionally the plaintiff and her predecessors varied somewhat from the usual and beaten path; that at the public road they made short turns; that at one point on the way there was a slough and mud hole in the road, and that to avoid the mud the plaintiff traveled around them. But with all this evidence, the court found, upon the uncontradicted testimony considered with that which was conflicting, that the plaintiff had acquired and was entitled to a right of way over defendants' land as set out by definite description in the decree of the court. We can not say this finding was contrary to the law and the evidence. Jones on Easem., section 269, says: "A right of way may be acquired by user, though between the termini the person claiming the right has at different times taken several different routes to avoid muddy and worn places in the route previously used. Such temporary variance of the way does not destroy it." There was evidence in this case that other persons besides the plaintiff used different routes in crossing defendants' land. Jones says, same section: "To show that one claiming a right of way by prescription had not confined himself to a definite route, it is not competent to prove that other persons had gone over the land in different directions,

and that the place where they traveled was for the time being the way for such persons, and for the claimant of the right of way. The acts of strangers could not defeat or qualify his right.

For the reasons stated, we affirm the decree of the circuit court.

*Affirmed.*