# CHARLESTON.

## Crosier v. Brown.

Submitted March 11, 1909.   Decided November 16, 1909.

1. EASEMENTS—*Private Right-of-Way—Definiteness.*
   An easement of private way over land must have a particular definite line.   (p. 274).

2. SAME—*Private Way—Adverse Possession.*
   To establish an easement of private way over land by prescription the use must be continuous and uninterrupted for the necessary period, under a *bona fide* claim of right, adverse to the owner of the land, and with his knowledge and silence. If the use is by his permission, or if he opposes and denies the right, title to the easement does not come by such use.   (p. 275).

Appeal from Circuit Court, Monroe County.

Bill by S. H. Crosier against John M. Brown. From a decree for complainant, defendant appeals.

*Reversed.*

*J. H. Crosier* and *Brown, Jackson & Knight,* for appellant.

*Rowan & Meadows* and *John W. Arbuckle,* for appellee.

BRANNON, JUDGE:

S. H. Crosier filed a bill against John M. Brown in the circuit court of Monroe county to enjoin Brown from hindering and obstructing Crosier in the use of a private way over land of Brown. A decree refused to dissolve the injunction, and perpetuated it, from which decree Brown appeals.

A demurrer to the bill was overruled. The bill, after alleging the ownership of Crosier of his tract of land and the ownership of Brown of his tract, states that Crosier "is owner of a right of way as appurtenant to his said tract of land over a portion of the land of the defendant, John M. Brown, about 500 yards in length, passing from near the western line of said tract through the western portion of said John M. Brown tract of land to the public road." The basis of the claim of Crosier is that by prescription he has title to the easement. Is the above description of the way sufficient? It is the only description in the record.

Try it by the law. "The public cannot acquire a prescriptive right to pass over land generally. The travel must be confined to a definite line through the prescriptive period." 22 Am. & Eng. Ency. L. 1222. No other rule can apply to private ways. Indeed, the law as to them is likewise stated. "A way, *ex vi termini,* imports a right of passing in a particular line." Washburn on Easements 160. "A right of way *ex vi termini* imports a right of passing in a particular line, not the right to vary it at pleasure, and go in different directions. This would be an inconvenience to the owner of the land charged with the easement, and an abuse of the right." 3 Kent 419. "It must be confined to a specific line or way. The public can no more claim a prescriptive right to pass, at any and all places, over a man's land than can an individual. The right must be confined to a definite, certain and precise line." *Gentlemen* v. *Soule,* 83 Amer. D. 264. We find in 14 Cyc. 1156, that "to establish a private right of way by prescription the line of traveled road must be definite." I ask, at what point on the western line of Brown's tract does this way begin? What line or course does it pursue through Brown's tract of fifty-one and one-fourth acres? At what point on the public road does it terminate? What public road? The bill does not answer these questions. The bill must point out the way by definite *termini* and route. The sacred right of property demands that such serious incumbrance upon a man's estate, if established by record, shall be clearly defined by the record memorial. The evidence does not make it definite. According to it I doubt if one could find this way. It is not fenced. It has no track. You can only find it by the marks of the wheels of a wagon only occasionally used. Many years hence, when living witnesses of its present place are dead, it becomes a question as to location. Recourse is had to this record. It will reflect no light by plat of delineation or other decisive or significant description. If there is anything affecting a man's land that should be definitely ascertainable it is a way. Jones on Easements, section 294, says that a way by prescription "must be definite in location. The adverse enjoyment must be in the same place within definite lines for the whole period of limitation." The proof does not more clearly define it. The decree does not attempt to do so.

But if the way were properly defined, the plaintiff is denied

relief by other law principles. Courts must be very careful before decreeing upon one man's land in favor of another without compensation such an incumbrance as a way, permanently impairing that man's dominion and ownership, which next to life and liberty, is the most valuable of rights inhering in the citizen. Our law, the law everywhere, fixes certain conditions essential to establish a way by prescription. One of those conditions is that the way must be claimed, during the prescription period, as a matter of right, not by mere leave or license from the owner of the land over which it passes. The use and claim must be adverse to him, and he must know of it. "As in the case of private easement, the use must be adverse, and under a claim of right, which is known to the owner." 22 Am. & Eng. Ency. L. 1221. If use of the way cannot be attributed to a claim of right in the party adversary to the other party, no easement exists. If the party does not intend to claim it as of right, if he enjoys the way by license from the owner, without intent to claim a title to the way as against the owner, there is no way. Our own cases say so. *Coalter* v. *Hunter,* 4 Rand. 58; *Stokes &c.* v. *Upper Appomatox Co.,* 3 Leigh 318; *Walton* v. *Knight,* 62 W. Va. 223. I add with emphasis that though one thus use a way over another's land fully intending at last to claim a way, yet if pending that use the land owner protests against the use and denies the right, the other party cannot by his own act alone get such easement. If he is silent, the use may become a right; but not if he protests. *Woolridge* v. *Coughlin,* 46 W. Va. 345; *Walton* v. *Knight,* 62 *Id.* 223. "No title by prescription can be acquired in an easement without the acquiescence and knowledge of the owner of the servient tenant." 22 Am. & Eng. Ency. L. 1210. "If during the period of the alleged acquisition, by use, the owner of the servient tenement resisted such claim, or opposed such use, it would negative the claim." Washburn on Easements, 182. Under the light of these legal principles let us advert to the facts. In 1882 Crosier began passing over Brown's land. In 1883 Brown and his nephew, Crosier, became unfriendly, and Brown prohibited Crosier from passing through his land, and Crosier ceased to do so until 1895. Here was a break of twelve years, importing, first, that Crosier sometimes passed through his uncle's land by

his permission, as the uncle swears and proves otherwise was the case, and secondly, it imports that Crosier did not intend to claim adversely a way as a matter of right. In 1895 uncle and nephew became friendly again, and Crosier resumed passing through until about 1905 when Brown and Crosier became again unfriendly Crosier resumed for a short time the passage, when they fell out again. They adjusted another matter, and Crosier paid one Williams four dollars for Brown upon an agreement that he might pass over the land. He resumed doing so until 1907. This oral consent could not give title. *Pifer* v. *Brown,* 43 W. Va. 412. When, as Crosier himself says, Brown posted a notice forbidding his passage over his land Crosier again desisted. It is by reason of passage over Brown's land for twelve years from 1895 to 1907, that Crosier claims an easement of way. That Crosier did frequently pass over Brown's land walking, riding or driving wagon no one questions; but the point is, did he do so with intent to get an adverse right, did he do this under *bona fide* claim of right, or did he do so by mere permission or license from Brown, as a kindness from an uncle to a nephew and neighbor? Crosier did not live on lot No. 9, from which he claims this way, but lived on another tract not adjoining. Crosier, his son, his wife and two brothers tell us that he used this way, and some of them say without license from Brown; but Brown swears that it was simply by his permission, and other disinterested witnesses confirm this; and certain circumstances confirm this, facts not disputed, enabling us to say that the fair aspect of the case shows that Crosier's passage over Brown's tract was permissive. For instance, there is no question of the fact proven by several witnesses, including Crosier's son, that during the period of use on which Crosier would rest his title, Brown cropped fields over which this alleged way passed, and built fences across the way, and directed Crosier to change his course and pass elsewhere, and Crosier did so. Crosier claims that he did so to accommodate Brown; but this fact is significant to deny an essential element to establish such an easement, intent to claim an adverse right, adverse claim. What is adverse claim in such a case? In 22 Am. & Eng. Ency. L. 1193, we find that "Adverse use has been variously defined as use under a claim of right known to the owner of the servient tenement; use whenever desired without permission asked or

objection made; use such as the owner of an easement would make of it, without permission asked or given, and disregarding entirely the claims of the owner of the land; and use under a claim of right inconsistent with or contrary to the interest of the other party, and of such a character that it is difficult or impossible to account for it except on the presumption of a grant." In this important matter, of subjecting, without pay, one man's land for the use of another, we must remember that the claimant carries the burden of proof, and he must show a use as of right, a hostile adversary use, clearly show it. 2 Greenleaf on Ev., section 539, lays down unquestionable law in saying that the use must be "adverse, exclusive and uninterrupted" for the period, and further says: "In order that the enjoyment of an easement in another's land may be conclusive of the right, it must have been adverse, that is, under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted; and the *burden of proving* this is on the party claiming the easement. If he leaves it doubtful, whether the enjoyment was adverse, known to the owner, and uninterrupted, it is not conclusive in his favor." This quotation is strongly approved by the Supreme Court of the United States in *District of Columbia* v. *Robinson,* 180 U. S. p. 99, which adds after such quotation, "Under a different rule licenses would grow into grants of the fee, and permissive occupation of land become conveyances of it". "It would shock the sense of right". Chief Justice Marshall said in *Kirk* v. *Smith,* 9 Wheaton 286. An uncle's kindness to a nephew is to convey and transfer to the latter a permanent charge on the uncle's land. Neither party dreamed of this result at the time. We see that Crosier's right was thus interrupted. And if his enjoyment was adverse and under claim of right, why yield to Brown's direction and travel a different route? Why let him fence across the way? In 1895 Brown stopped Crosier's use, and he desisted. They became unfriendly. Then, Brown agreed that if Crosier would pay a man named Williams four dollars for a consideration not connected with this matter he might still pass as he had been doing. Why pay for this privilege if time had given him right? Why concede the superior right of Brown? Admission of the owner's superior right is fatal. "A request for permission to use the easement, an offer to purchase the right during the prescriptive

period constitutes such admission." 22 Am. & Eng. Ency. L. 1195. Even an offer to purchase after the period goes to show that the enjoyment was not adverse. Same, p. 1196. So, it is clear that Crosier had not proven essential elements for title by prescription; on the contrary, the weight of evidence disproves such title.

If the claim of way of necessity can be said to be relied on, the answer is that it cannot exist because Brown did not sell Crosier the tract, and also because a public way runs through Crosier's tract, and in the partition many years ago of a large tract of which Brown's and Crosier's tracts were a part, the lots were so laid off as to give outlet from each tract to a public road. Crosier's tract was so located as to include this public road as its outlet.

Our conclusion is to reverse the decree, dissolve the injunction, and dismiss the bill.

*Reversed.*