ROBERTS v. JAEGER.

(First Division. Juneau. October 26, 1914.)

No. 1052–A.

1. EASEMENTS ⬡⬤5—PRESCRIPTION.
    There can be no question that, to establish a prescriptive right to easement, the user must have been open, continuous, and adverse, under claim of title or right, and with the knowledge and acquiescence of the owner of the servient estate.

2. ADVERSE POSSESSION ⬡⬤58—EASEMENTS.
    Before title will be gained by prescription, there must be an invasion of the rights of the party against whom it is set up, and of such character as to afford him ground of action.

3. ADVERSE POSSESSION ⬡⬤68, 85(1), 114(1)—EVIDENCE.
    It is a well-established rule that the doctrine of adverse possession is to be taken strictly, and not to be made out by inference, but by clear and positive proof. Every presumption, it is said, is in favor of possession in subordination to the title of the true owner. The possession must be under claim and color of title, and exclusive of any other right.

Z. R. Cheney, and Hellenthal & Hellenthal, all of Juneau, for plaintiff.

Winn & Burton, of Juneau, for defendant.

JENNINGS, District Judge. There can be no question that, to establish a prescriptive right to easement, the user must have been open, continuous, and adverse, under claim of title or right, and with the knowledge and acquiescence of the owner of the servient estate.

The court experiences no difficulty in finding that there is no evidence that Roberts used this alleged right of way under a claim of right or title, unless it be that the user is of itself prima facie evidence of claim of right.

The court is urged to hold that, "where a continuous use of a passageway has been shown for ten years, the presumption is that the use was adverse and under a claim of right, and the burden of proof is on the defendant to show that the use was by license or permission," and many cases are cited which seemingly sustain that rule; but, as said in Washburn on Easements and Servitudes:

"To bring a case within that principle, it is apprehended that it must clearly be such a use as would be the invasion of another's property in a manner indicating a claim of right on the part of one party, and a yielding to such right by the other." Page 157.

"It is upon the ground above stated that the use is neither an injury to the owner of the land, nor evidence of any assertion of a right adverse to him, that the courts of South Carolina have repeatedly held that no one gains an easement of way or of hunting on another's land, which is wild and unclosed, by traveling across or hunting over it, such use by the public being regarded as a permissive one, from the condition of the country, and the general understanding of the people who enjoy it, unless evidence is offered to give a different character to such use." Page 159.

It is worthy of note, too, that in all the cases cited by plaintiff the period of use has been more than 20 years, which period of time has come to stand for the common-law "time beyond which the memory runneth not to the contrary." Such length of time presupposes a grant, just as if the user had a deed—paper title. But our ten-year statute is not entirely analogous. It is a statute of repose, and actually presupposes that there never has been a deed. The adversary character of the holding or enjoyment is one of the tests of the sufficiency of that holding or enjoyment, and I can see no more reason for indulging in the presumption that a ten-year simple user of a right of way is hostile than I can for indulging in the presumption that any other simple holding of land for ten years is hostile to the true owner.

In Columbia v. Robinson, 180 U. S. at page 99, 21 Sup. Ct. at page 285 (45 L. Ed. 440), the Supreme Court says:

"In order, however, that the enjoyment of an easement in another's land may be conclusive of the right, it must have been adverse, that is, under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted; and the burden of proving this is on the party claiming the easement. If he leaves it doubtful whether the enjoyment was adverse, known to the owner, and uninterrupted, it is not conclusive in his favor." Sections 538 and 539. Under a different rule licenses would grow into grants of the fee, and permissive occupations of land become conveyances of it."

In Kirk v. Smith, 9 Wheat. 286, 6 L. Ed. 81, the court says, Chief Justice Marshall speaking:

"One of these, which has been recognized in the courts of England, and in all others where the rules established in those courts have been adopted, is that possession, to give title, must be adversary.

The word is not, indeed, to be found in the statutes; but the plainest dictates of common justice require that it should be implied. It would shock that sense of right, which must be felt equally by legislators and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title. Several cases have been decided in this court, in which the principle seems to have been considered as generally acknowledged; and in the state of Pennsylvania, particularly, it has been expressly recognized. To allow a different construction would be to make the statute of limitations a statute for the encouragement of fraud—a statute to enable one man to steal the title of another, by professing to hold under it. No laws admit of such a construction."

In Clarke v. Clarke, 133 Cal. 667, 66 Pac. 10, the California court says:

"The law will not allow the land of one person to be taken by another without any conveyance or consideration, upon slight presumptions or probabilities. Niles v. City of Los Angeles, 125 Cal. 576, 58 Pac. 190. The burden is upon the party who claims title by prescription to clearly prove by competent evidence all the elements essential to such title. The user must have been adverse to the true owner, and hostile to his title. It must have been actual, continued, open, and under a claim of right. It must have all the elements necessary to acquire title by adverse possession. Thomas v. England, 71 Cal. 459, 12 Pac. 491."

See, also, Crosier v. Brown, 66 W. Va. 273, 66 S. E. 327, 25 L. R. A. (N. S.) 174.

The Oregon court has held that, before title will be gained by prescription, there must be an invasion of the rights of the party against whom it is set up, and of such character as to afford him ground of action. Hume v. Rogue River, 51 Or. 237, 83 Pac. 391, 92 Pac. 1065, 96 Pac. 865, 31 L. R. A. (N. S.) 396, 131 Am. St. Rep. 732; Wimer v. Simmons, 27 Or. 1, 39 Pac. 6, 50 Am. St. Rep. 685. And in Hammond v. Zehner, 21 N. Y. 118, it is said:

"Generally, mere possession or use would not be sufficient to arrest his attention, or to put him on inquiry. To effect this, it is necessary in many cases that the person in possession or exercising the use should give some additional indication that it was hostile to another's claim. It is a well-established rule, therefore, that the doctrine of adverse possession is to be taken strictly, and not to be made out by inference, but by clear and positive proof. Every presumption, it is said, is in favor of possession, in subordination to the title of the true owner. The possession must be under claim and color of title, and exclusive of any other right. Jackson v. Sharp, 9 Johns. [N. Y.] 167 [6 Am. Dec. 267], and cases cited in note a.

"But, on the other hand, it may be well asked: What manifestation of claim could the defendant employ other than the very act of which the plaintiff complains—the overflowing of a portion of his land so as to render it useless for cultivation or any other agricultural use? Or, if there were any other method in which his adverse claim could be indicated, other than the express verbal assertion of it, could any be more effectual for the purpose of inducing the plaintiff to assert his rights than the continual overflow of his lands for three and twenty years? It was in its very nature hostile to the rights of the plaintiff; it was an open and constant injury to him. The user was plainly wrongful—an invasion of his rights, for which he was entitled, at any time within the twenty years, to recover damages."

"The time does not begin to run until some injury has been done which will support an action," says the South Carolina court.

See, also, Washburn on Easements, pp. 150, 155, 171, and Williams v. Haile Gold Mining Co., 84 S. C. 1, 66 S. E. 118.

Besides, there is a substantial conflict in the testimony as to whether these steps were in 1908 put back in the place in which they were prior to that time. A slight variation would not usually make any difference, but it must be remembered that in this case a foot is a great distance, as it is shown that about half of the 3-foot right of way was on Caro's land. Before the court would be justified in interfering with an owner's enjoyment of his own land, it ought to be satisfied by the clearest kind of proof that the owner has surrendered that absolute jus disponendi which the law guarantees to him. To so satisfy the court is the burden of the plaintiff. The court is not so satisfied.

Findings and judgment for defendant.