# CHARLESTON.

## BOARD OF EDUCATION v. BERRY.

### Submitted June 11, 1907.   Decided October 29, 1907.

1. EQUITY—*Pleading—Exhibits.*
   Documents made exhibits with are parts of a bill in chancery, and are of controlling force in case of discrepancy between them and the bill.   (p. 436.)

2. JUDICIAL SALE—*Notice to Purchaser.*
   A purchaser at a judicial sale is charged with notice of every fact appearing upon the face of the record affecting the title acquired by him.   (p. 437.)

3. EVIDENCE—*Judicial Notice.*
   An act of the Legislature creating an independent school district is a public law of which the courts of the State will take judicial notice.   (p. 438.)

4. MUNICIPAL CORPORATIONS—*Corporate Existence.*

Where there has been a *bona fide* attempt to organize a public corporation with color of law, and the exercise of corporate rights and franchises, the corporate existence cannot as a general rule, be litigated in actions between private individuals, nor between private individuals and the assumed corporation.   (p. 440.)

5. SAME—*Who May Question.*

Proof of such corporate existence will be sufficient evidence of rights, except as against the State, where the inquiry is merely collateral, though put in issue by the pleadings.   (p. 440.)

6. SAME.

Where a corporation exists *de facto*, it may exercise the powers assumed, and the question of its having a right to exercise them will be deemed one which can be raised only by the State.   (p. 440.)

Error to Circuit Court, Braxton County.

Action by the board of education of Flatwoods district against William H. Berry.   Judgment for defendant, and plaintiff brings error.

*Reversed.*

HINES & KELLY, for plaintiff in error.

HAYMOND & FOX and JAKE FISHER, for defendant in error.

MILLER, PRESIDENT:

In an action of unlawful entry and detainer in the circuit court, the defendant, besides the general issue, by plea put in issue the corporate existence of the plaintiff.   In a trial before a jury, after the plaintiff had introduced all its evidence, the circuit court sustained the defendant's motion to exclude such evidence and directed a verdict for defendant, which the jury returned accordingly.   The subsequent motion of the plaintiff to set aside the verdict and award a new trial did not prevail, and judgment was rendered dismissing the plaintiff's summons.   It does not distinctly appear from the record upon what particular ground this action of the court was founded.

The property sued for was a lot of 1 1-2 acres with a school house thereon, conveyed to the Board of Education of Salt Lick District by W. F. Morrison and L. J. Berry October 14, 1897, to which the plaintiff succeeded by virtue of its incorporation as the Board of Education of Flat-

woods District. This lot was part of 54 acres conveyed to Morrison and Berry by W. E. Haymond, special commissioner, September 7, 1893. On October 14, 1897, Morrison and Berry conveyed the lot sued for to the Board of Education of Salt Lick District, and later on the same day to H. P. Pierce one acre out of the 54 acres; and on December 13, 1897, they conveyed to W. S. Stump 40 acres more or less, described as being a part of the 54 acre tract. On February 21, 1899, the Board of Education of Salt Lick District conveyed to W. S. Stump 138 1-2 square rods and 58 square feet, part of the lot so conveyed to it by Morrison and Berry. The plaintiff, therefore, if entitled to recover, was entitled to recover only that part of the property described in the summons exclusive of the portion thereof convened to Stump.

The defendant offered no evidence except in connection with the cross-examination of the plaintiff's witnesses. The material parts of the record of the chancery cause of the Merchants National Bank against J. W. Morrison and others were put in evidence, consisting of the summons, extracts from the bill, the deeds from Morrison and Berry to Pierce and Stump and from Haymond to Morrison and Berry, abstracts from the commissioners' reports and of the decrees of sale and confirmation pronounced therein, and the notice of sale by the commissioners appointed to make sale of the lands decreed to be sold. This record shows that the defendant William H. Berry, on November 23, 1903, became the purchaser of the residue of the 54 acres conveyed to W. S. Stump by the said Morrison and Berry, and was awarded a writ of possession. The final decree of confirmation was entered December 4, 1903. Neither his deed nor the writ of possession was put in evidence; but the deputy sheriff who executed the writ testifies that when he put Berry in possession thereunder in June or July, 1904, the Board of Education of Flatwoods District was in possession of the property.

The defendant makes no other claim of title, or right to possession of the property sued for, except by virtue of the judicial proceedings referred to. This suit of the Merchants National Bank was a suit instituted February 11, 1898, to enforce the liens of sundry judgment creditors of the plain-

tiffs therein.   The deed from Morrison and Berry to the Board of Education of Salt Lick District was not recorded until November 25, 1903, two days after the purchase by William H. Berry but before the decree of confirmation. These judgments, recovered and docketed in April, 1897, were undoubtedly liens upon the whole tract of 54 acres which the creditors had the right to enforce.   But the question is not what they had the right to do, but what their suit accomplished and whether the defendant acquired title therein to the lot of ground in controversy.   The plaintiff was no party to that suit; nor was it a *pendente lite* purchaser, for the deed was made to its predecessor prior to the institution of the suit.   True the liens of the judgments accrued prior to the deed; but unless the lot in controversy was sold, and purchased by the defendant, he acquired no title thereto or right to possession thereof.   We must then look to the bill and proceedings in that suit to determine what was actually sold and purchased.   The bill alleged that Berry and Morrison acquired title to the 54 acres from Haymond, commissioner, by deed of September 7, 1893, " a part of which they conveyed to H. P. Pierce the 14th of October, 1897, and the residue thereof to W. S. Stump on the 13th of December, 1897," and copies of these three deeds were exhibited with the bill.   The deeds from Berry and Morrison to Pierce and Stump, however, by the very words of description, exclude therefrom the school house lot conveyed to Salt Lick District; and, although the bill perhaps intended to charge that the deed to Stump conveyed all of the 54 acres, except that part conveyed to Pierce, yet the Stump deed itself, being exhibited with the bill, is of controlling force.   *Richardson* v. *Ebert*, 56 S. E. 887, recently decided by this Court.   The first commissioner found that the judgments were liens only upon the one acre conveyed to Pierce and the 40 acres conveyed to Stump; the second, that Morrison and Berry conveyed the one acre tract to Pierce as part of the 54 acres and subsequently the residue thereof to Stump, and these two deeds are vouched for this finding; but, as we have seen, these deeds exclude the school house lot.   The decree of sale adjudged that Haymond, commissioner, conveyed to Morrison and Berry a tract of 54 acres; that Morrison and Berry October 14, 1897, conveyed one

acre thereof to Pierce, and on December 13, 1897, conveyed the residue of said 54 acres to Stump, and that the judgments were liens thereon, and directed sale thereof. The notice of sale described the land as "one acre of land at Shaverville conveyed to H. P. Pierce by W. F. Morrison and L. J. Berry, and the residue of 54 acres at Shaverville conveyed to W. S. Stump by said Morrison and Berry." The decree of confirmation refers to this land as "the residue of 54 acres at Shaverville to W. S. Stump by W. F. Morrison and L. J. Berry," no reference being made in this decree to the one acre conveyed to Pierce. If we include the Pierce lot, however, how can we say that the court sold or intended to sell any of the 54 acres except the one acre conveyed to Pierce and the residue of the 54 acres conveyed to Stump? By its terms the Stump deed bounds and describes 40 acres more or less, and by its description excludes the school house lot; and any deed which the commissioners were authorized to make, and the writ of possession, were limited to the land described in these two deeds. We must presume, in the absence of the writ, that the writ of possession ran with the provisions of the decree. Moreover, not having been a party to the suit, the plaintiff should before the writ issued have been summoned to show cause why it should not surrender possession. *Trimble* v. *Patton*, 5 W. Va. 432; *Paxton* v. *Rucker*, 15 W. Va. 547; *Williamson* v. *Russell*, 18 W. Va. 612. A member of the board of education, who was present when the officer arrived and who had the key to the school house, stated to the officer that before surrendering the key he wished to see the president of the board, and, while he was absent for that purpose, the officer by force put the defendant in possession of the school house. This was an unauthorized and unlawful act, for which chapter 89 of the Code gives the summary remedy here sought to the one so turned out of possession, no matter what right or title he had. The purchaser at a judicial sale is charged with notice of every fact appearing upon the face of the record affecting the title acquired by him. *Calvert* v. *Ash*, 47 W. Va. 486; *Williamson* v. *Jones*, 43 W. Va. 563; *Hoback* v. *Miller*, 44 W. Va. 635; *Bank* v. *Hyer*, 46 W. Va. 13. The parties had the right to exclude from these proceedings the school house

lot, and the proceedings effectually did so. The record does not disclose whether all the judgments were satisfied out of the land sold. The rule in such cases is that the lands of a judgment debtor shall be sold in the inverse order of their alienation. Hence it would have been error to have sold the school house lot, first conveyed, if the other lands of the judgment debtors subsequently aliened and decreed to be sold were sufficient to satisfy the liens. *McClaskey* v. *O'Brien*, 16 W. Va. 791; *Payne* v. *Webb*, 23 W. Va. 558; *McClung* v. *Beirne*, 10 Leigh 394.

Was the plaintiff competent to sue? This is the important and only other question fairly arising upon the record. The plaintiff was created into a corporation by the name of the "Board of Education of Flatwoods District" by an act of the legislature, chapter 134 acts 1901, entitled "An Act to to establish the Independent School District of Flatwoods," which became effective ninety days from passage. It provided that, in the event of the majority of the votes cast at an election to be held on the fourth Tuesday in May following should be in favor thereof, " the town of Shaverville and Flatwoods and territory adjacent" (described by metes and bounds) should, after the result of the election should be ascertained and declared, constitute the "Independent School District of Flatwoods;" that the board of education, consisting of three members elected by the qualified voters resident therein, should be a corporation, and should be vested with the same rights, exercise the same powers, perform the same duties and be governed by the same laws as boards of education elsewhere in the county, except in so far as changed by the provisions of the act, with power to sue and be sued, plead and be impleaded, contract, purchase, hold and grant estate real and personal, etc.; that the election to be held to determine whether said independent district should be established should be superintended and the result thereof ascertained and declared by election officers appointed by the county court, the election laws of the state to control the election so far as applicable. The act in question was offered in evidence in its entirety, although, being public law, it is one of which the courts of the state would take judicial notice. *Bank* v. *Willis*, 7 W. Va. 31; *Hart* v. *Railroad Co.*, 6 W. Va. 336;

*Bank* v. *Machir*, 18 W. Va. 271; *Hays* v. *Bank*, 9 Grat. 127; *Striblin* v. *Bank*, 5 Rand. 132; *Mason* v. *Bank*, 12 Leigh 84, 87.

It is not denied that this was a valid act of the legislature, or that, subject to the condition upon which it was to become effective, it created into an independent school district the territory therein described. But it is claimed that, on account of alleged irregularities in the election, this public corporation never took life; that the conditions of its existence were never fulfilled; that it was incompetent to sue, or to assume and hold possession of the property sued for; and hence that as a matter of law possession can not be said to have been unlawfully taken or withheld from it. The record shows that on March 6, 1901, the county court by an order entered directed that the special election provided for by the act should be held at two school houses within the proposed district, one in Salt Lick District near Cold Spring, at which those resident in Salt Lick District should be entitled to vote on the question; the other on the Rhea farm in Flatwoods, at which those resident in Holly District should be entitled to vote. The order also appointed officers to conduct the election, with power to ascertain and declare the result. By a subsequent order of July 9, 1901, it appearing that the election had been held and the result thereof ascertained as provided by law and the former order of the court and that said independent district had been legally established, the county court declared said Independent School District of Flatwoods established as provided in said act. Following this election, a board of education was elected as prescribed by the act, who entered upon the discharge of its duties, made levies, established schools and employed teachers and continued to exercise the functions of a corporation up to the time of the institution of this suit. The act of the legislature does not show what part or parts of either of the magisterial districts in said county were covered by the territory described. The proceedings of the county court would indicate that only the districts of Salt Lick and Holly were affected, inasmuch as polling places for voters were established only in those districts. Oral evidence on the trial, however, tends to show that the territory included covered also a part of Otter Dis-

trict, but the extent thereof does not appear; that voters from all three districts voted at the election; a few from Otter District.

So far as the record shows the state has not, nor has any other person ever before, questioned the corporate existence and capacity of the plaintiff. The defendant relies strongly upon the provisions of section 10, article 12 of the constitution, which provides that "no independent school district or organization shall hereafter be created, except with the consent of the school district or districts out of which the same is to be created, expressed by a majority of the voters voting on the question." It is claimed that this provision was disregarded, not by the act of the legislature, but by the county court and election officers; that the election should have been held in each of the districts affected. at each of the voting places established for general elections; and that the election held at the two voting places within the boundaries of the independent district was not a compliance with the constitutional provision and the election laws of the State. In our opinion, the provision of the constitution referred to and the general law do contemplate that the election in the several districts affected should be held at all the voting precincts established for general elections. But it is evident that the county court directing the election in question, and the election officers, did not so construe the law.

Did the irregularity in the election invalidate the same, and render the effort to complete the incorporation abortive? As an original proposition, in any proceeding directly attacking the same we might be forced to hold the incorporation void; but this is not such a proceeding. Here the incorporation was collaterally attacked by a third person, in a suit to defeat the recovery of possession of public property in possession and control of the plaintiff; and we are not bound by the same rule as in direct proceedings to annul or take away corporate rights. The record convinces us that there was a *bona fide* effort to comply with the law to effectuate the incorporation, and the people affected thereby seem to have acquiesced therein, having elected a board of education, which has exercised all the functions pertaining to the corporation, so as to create a

*de facto*, if not *de jure*, corporation.   A corporation *de jure* is one whose right to exercise a corporate function would prove invulnerable if assailed by the state in a *quo warranto* proceeding; a corporation ˙ *de facto*, one where there is a charter or some law under which a corporation with the powers assumed might lawfully be created, and a user of the rights claimed to be conferred by such charter or law, or where there has been a *bona fide* attempt to organize a corporation under the charter or an enabling statute.   10 Cyc. 252, and authorities cited.   To establish the existence of a *de facto* corporation a charter or law authorizing the existence of the corporation must be shown, and user under such authority.   10 Cyc. 256, note 26, and authorities cited.   In *Snider* v. *Troy*, 91 Ala. 224, the court holds that a corporation *de facto* exists "when, from irregularity or defect in its organization or constitution, or from some omission to comply with the conditions precedent, a corporation *de jure* is not created, but there has been a colorable compliance with the requirements of some law under which an association might be lawfully incorporated for the purposes and powers assumed, and a user of the rights claimed to be conferred by law; or, in other words, when there is an organization with color of law and an exercise of corporate rights and franchises."   As a general rule, such corporate existence can not be litigated in actions between private individuals, nor between private individuals, and the assumed corporation.   10 Cyc. 256, note 27, and authorities cited.   In 1 Thomp. on Corp. section 503, it is said in reference to a *de facto* corporation that if it appears to be acting under color of law and is recognized by the state as such, such a question should be raised by the state itself by *quo warranto* or other direct proceeding, and that the rule would not be different if the constitution itself prescribed the manner of incorporation.   Even in such case, proof that the corporation was acting as such under legislative sanction would be sufficient evidence of rights except as against the state, and private persons could not enter upon any question of the irregularity.   Where a corporation exists *de facto*, it may exercise the powers assumed, and the question of its having a right to exercise them will be deemed one which can be raised only

by the state. 10 Cyc. 334; Clark & Marshall on Priv. Corp. sections 80, 81, and cases cited. In 1 Beach on Pub. Corp. section 76, the author says: "When the inquiry into the corporate existence of a municipality is merely collateral, only that the municipality exists *de facto* need be proved." In this state causes of forfeiture of corporate franchises and actual expiration thereof by operation of law will not abate a suit by or against such corporation, or be cause for dismissal. *Lumber Company* v. *Ward*, 30 W. Va. 43; *Railroad Co.* v. *Supervisors*, 3 W. Va. 319; *Moore* v. *Schoppert*, 22 W. Va. 282.

These authorities, and the conclusion we have reached with respect to the title of the defendant, require us to reverse the judgment of the circuit court and award the plaintiff a new trial.

*Reversed.*