# CHARLESTON.

AILES *et als. v.* HALLAM *et als.*

Submitted September 10, 1910.  Decided May 2, 1911.

1. EASEMENTS—*Construction—Right-of-Way.*
    A deed, executed by a number of adjoining and neighboring property owners, in a community partially laid out in town lots, for the purpose of establishing certain roads for their common benefit, conveying the fee simple title of the strips of land constituting the roads to two of their number, and securing to the grantees and all the other parties thereto the right to use the roads "as a right of way for all purposes as completely as if they were a public street," confers upon all the parties thereto and their successors in title the right to free and wholly unobstructed use of such roads. (p. 310).

2. SAME—*Construction by Conduct.*
    The terms of such a deed being plain and unequivocal and its purpose clear, the existence of gates on such roads at the date of the deed and the subsequent maintenance thereof, do not alter the construction by conduct. The rule of practical construction is not applicable to an unambiguous instrument. (p. 310).

3 SAME—*Title or Right Acquired—Right to Maintain Gates Across Private Way.*
    Right to maintain a gate across a private way may be obtained by prescription. (p. 310).

4. TENANCY IN COMMON—*Rights in Right of Way.*
    A right of way vested in a number of adjoining and neighboring property owners makes them tenants in common of such way. (p. 311).

5. SAME—*Hostile Title of Possession—Acts of Tenants in Common.*
    If one of such persons maintain a gate or gates across such a way without notice to his co-tenants of any claim of right to do so, his exercise of such privilege is deemed to have been permissive and not adverse. (p. 311).

Appeal from Circuit Court, Jefferson County.
Bill by Milton E. Ailes and others against W. F. Hallam and others. Decree for plaintiffs, and defendants appeal.

*Affirmed.*

*Faulkner, Walker & Woods,* for appellants.

*Forrest W. Brown,* for appellees.

POFFENBARGER, JUDGE.

The decree complained of here enjoins the maintenance of gates upon certain private ways, and the correctness thereof involves the construction of a deed, and an inquiry as to a claim of a prescriptive easement or right to maintain them.

Near the towns of Bolivar and Harpers Ferry, in Jefferson county, on a high ridge between the Potomac and Shenandoah rivers certain lands owned by a corporation known as the President and Trustees of Storer College, and adjacent lands owned by individuals, were, some years ago, partially sold out in small tracts with a view to the location thereon of summer residences. The first sale, embracing 18.1 acres, was made to one Col. Whitman, who erected a costly residence on it, known as the "Scottish Castle". The present owner of this piece of land is one of the defendants, Mrs. Mary Van Dake Hallam. Other sales of smaller portions of the land were subsequently made to other persons, Mary G. Moore, Emmett Truitt, Louise C. Goodman, F. M. Pennock, and one Judge Vale, now deceased. On the northern side of the Whitman property, an avenue known as Whitman Avenue, was laid off. Through it runs another avenue known as Prospect Avenue. Neither of these was ever dedicated or opened as a public highway. Gates were maintained across them from the first. On the 22nd day of May, 1895, all of the persons interested in the lands adjacent to these roads executed a deed, a recited purpose of which was to make some changes in the plat, according to which the lands had been sold, and particularly to designate certain rights of way through the lands, to be enjoyed by the several owners thereof with respect to Prospect and Whitman Avenues as indicated on said plat. It further recited that the change in the plat had been made; that the parties had agreed that Prospect Avenue, between two designated points, and Whitman Avenue, from the Harpers Ferry turnpike to Prospect Avenue, as indicated on the plat, should "be opened as a right of way for the use and enjoyment of all the parties" to the deed; and that they had "concluded and determined to dedicate the land

occupied by said streets for the purpose of a right of way or road." It then granted to S. W. Lightner and N. C. Brackett, their heirs and assigns forever, all the joint and several right, title and interest of the parties of the first part, in and to all of the land occupied by Whitman Avenue and Prospect Avenue, defining the width of each; reserved to the grantors, including said Lightner and Brackett, their heirs and assigns forever, the right to use said avenues "as a right of way for all purposes as completely as if they were a public street"; and granted the like right to the said Brackett and Lightner. Then the parties of the second part granted to the parties of the first part "a right of way for all purposes as fully as if it were a public street over said Prospect Avenue and Whitman Avenue." This deed seems to have vested the title in fee of these roads or strips of land in Lightner and Brackett and then secured to them and all the other parties an easement, consisting of the right to use the same as a road.

As has been stated, these were originally farm lands, and, when the roads were established across them, gates were erected and maintained to protect them from cattle and other stock running at large. There was one at the intersection of Prospect Avenue with the Charlestown pike. There was another across Whitman Avenue and another on the north end of Prospect Avenue. With a single exception, they seem to have been there at the time the deed was executed and have ever since been maintained. The location of one has been changed. W. F. Hallam, the owner of the land adjoining the Whitman land, purchased in 1904, of Storer College, moved one of the gates to a different location. The deed makes no reference to any of these gates. It neither secures any right to any person to maintain them, nor forbids them by name.

The Hallams became the successors of the Vales to the title to the Whitman property and of course acquired such rights, respecting it, as the Vales had and no other. The deed to them from Wilmer P. Vale and others, dated November 10, 1899, contains the following clause, referring to the right of way deed: "This conveyance is made subject to an easement or right of way through the land herein conveyed, known as Prospect Avenue as indicated in a deed by the said parties of the first part and others to S. W. Lightner and N. C. Brackett".

Only one-half of Whitman Avenue was originally on the Whitman land, the other half being on land, subsequently acquired by W. F. Hallam. The deed dated May 2, 1904, conveying it, contained an exception of such rights and interest as had been conveyed by the right of way deed of August 22, 1895.

After the Hallams, husband, and wife, had acquired these properties, they made some changes in the fences and gates, and so fixed and adjusted one of the gates as to make it more burdensome to their neighbors who used the road than it had been. They also constructed a new road in a different location, leaving it entirely open and free from gates, with the supposed intent to induce travelers to use it instead of the old one, and so ultimately get rid of the old ones, or one of them. These acts led to the present controversy. The right of the Hallams to maintain any gates at all on the roads was questioned. The matter was taken up with them, and a meeting was held at the Vale residence for the purpose of securing a better understanding of the situation. The highway deed was read and considered and Mr. Hallam seems to have been convinced that it forbade his maintenance of gates. He had some further interviews with interested parties, and seemed inclined to consent to the removal of the gates. An agreement was prepared and submitted to him, providing for such removal, and this seems to have impressed him with the view that the highway deed, properly construed, did not deny to him the privilege of gates. He made further inquiry and was advised that it did not. Thereupon he declined to sign the agreement or remove the gates.

Counsel for the appellants very properly insist upon the consideration of all the facts and circumstances, existing at the date of the execution. of the deed, the situation of the parties and their purposes, together with its terms, in seeking its true meaning and intent; and, in this connection, place great stress upon the presence of the gates across the roads in question, and continuance thereof. This fact, though important, is not necessarily controling. It does not preclude the consideration of others, nor deny to them such force and effect as they naturally and reasonably have on the question of intent. The intent to make the section traversed by these roads one of small holdings for homes and summer residences was

well known to all the parties at the date of the execution of the deed. A portion of the land had been platted off into town lots, and some of the parties to the deed were owners of such lots. A village or town had been commenced, though not incorporated. A small commencement had been made with the expectation of growth and development and the conversion of a great deal more of the Storer College and Brackett lands into such lots and residences. Around the small beginning thus made, lay broad acres of land, suitable for cultivation which it was neither advisable nor provident to throw open to the public, nor economical to fence off with reference to these roads, so as to make them highways. The Trustees of Storer College, and Brackett, owning adjacent and neighboring lands, were deeply interested. It was their purpose to avoid the expense of fencing and breaking up the farms, to such extent and in such manner as to cause unnecessary expense, or, indeed, any expense that could be avoided. They were parties to this deed. Ultimately, they expected to dispose of all the land, and their intent to make the deed broad enough to secure such right to property owners whenever they should demand it, and depend, for the time being, upon the indulgence of the gates, as a mere act of friendship and neighborly courtesy, may well be supposed. The terms of the deed indicate this. The owners of the land through which these two roads pass conveyed the fee in them to Brackett and Lightner, leaving in the adjacent land owners only a right of use. These roads were also given a greater width than is usual in the case of private ways or even country highways. For the most part, they were made forty feet wide. The extent of this right of use on the part of adjacent property owners is clearly defined. They are given the right to use the roads, named as avenues and called streets, "for all purposes as completely as if they were public streets". In the argument, it is said this description relates to the use of the ways and not to the ways themselves. In other words, the ways are not described nor defined as public streets. Granting this, the use which the parties are entitled to make of them includes all the purposes for which public streets are used, and there is a further extension of this right of use. The deed says they may be used for all purposes for which public streets may be used, and as completely and

fully, for such purposes, as public streets are used. Viewing these terms in the light of all the facts and circumstances, obtaining at the date of the deed and the situation and conduct of all the parties thereto, we see no reason for saying the meaning, import and effect of these terms shall be restrained. While some of the facts may indicate the possibility of intent and purpose, falling short of the terms used, other facts, circumstances and purposes have an equally potent bearing in the opposite direction.

In thus considering surrounding facts and circumstances and the situation and purposes of the parties, some of which are not disclosed by the terms of the deed, we are treating it as ambiguous and, therefore, as susceptible of construction by reference to extraneous evidence. In view of its terms and the facts and circumstances and purposes disclosed by them, we do not regard it as being in any sense ambiguous. As we have observed, it vests the fee in these road ways in Brackett and Lightner. The strips of land are severed in title from the tracts and lots to which they formerly belonged and made separate and distinct parcels of land, the use of which, for road ways, is given to all the interested parties. They are not mere rights of way granted by property owners over their own lands to owners of adjacent lands. They go beyond that and become community roads; and the right of use thereof is as broad and extensive, in respect to purposes and manner, as it was possible to make it without declaring the roads to be public highways. So we think it is not at all ambiguous. It is clear and positive in its terms and wholly inconsistent with right in anybody to maintain gates or other obstructions across the roads so established.

Treating the deed as ambiguous, counsel for the appellants rely upon prior and subsequent conduct, under the rule of practical construction; but this principle has no application in the case of a plain and unequivocal instrument. Its terms cannot be annulled nor their effect destroyed by mere conduct. *Camden* v. *McCoy,* 48 W. Va. 377; 2 Parsons Con. (8th Ed.) 495.

As more than ten years intervened between the date of the right of way deed and that of the first protest against the gates, made to the Hallams, they claim a prescriptive right

to maintain them. That such a right may be so acquired seems clear upon both principle and authority. It is not corporeal property and incorporeal property is peculiarly the subject matter of title by prescription. *Wooldridge* v. *Coughlin,* 46 W. Va. 345; Jones on Easements, sec. 161; 22 A. & E. Enc. L. 1185. Under this principle of acquisition or rule of property, this Court upheld a claim to the free use of a toll road in an individual and his family and servants. *Lucas* v. *Turnpike Co.,* 36 W. Va. 427. The right to obstruct a private hall or entry may be so acquired. *Sorkin* v. *Sentman,* 162 Pa. St. 543. A stairway projecting into a private way owned in common by adjoinig owners is also within the principle. *Moon* v. *Mills,* 119 Mich. 298. The important and controling inquiry then is whether Mr. and Mrs. Hallam have so acquired the right they claim. The right of way deed clearly created a right for the benefit of the properties owned by the parties thereto and annexed it to those properties. This right thereby became appurtenant to the properties, passing with them through successive alienations as an appurtenance thereof. When so created and for such purpose, it was a right in common, made for all the owners of the properties and their successors in title, and intended to be exercised and enjoyed by them on equal terms. They were, therefore, tenants in common, and incorporeal property, such as this, may be the subject of such a tenancy. 17 A. & E. Enc. L. 668. Owners of lots abutting upon a private way, established for their common benefit and appurtenant to each lot, have unity of possession, and are tenants in common of such way. *Goralski* v. *Kostuski,* 179 Ill. 177. This relationship of the parties applies certain principles which precluded Judge Vale, the predecessor in title of Mrs. Hallam, from obtaining any right in respect to the roads, adverse to his cotenants, without notice to them of his intention to claim it. *Pickens* v. *Stout,* 67 W. Va. 422; *Clark* v. *Beard,* 59 W. Va. 669. He owned the Whitman property until November, 1899, and there is no evidence of any hostile claim of right against the interests of his cotenants or inconsistent with their rights as defined by the deed. On the contrary, all the circumstances herein detailed indicate a permissive and temporary maintenance of the gates. Others, owning lands to which the ways were appurtenant, kept gates across them at times, with-

out any claim of right to do so or belief that they had such right. The ownership and possession of Vale and his permissive and friendly exercise of the gate privilege extend to a time within ten years before the institution of this suit. The possession of the appellants themselves was, therefore, less than the statutory period of ten years, if it be conceded that they have maintained the gates with hostile intent. Even though the element of cotenancy were not involved, the acts relied upon to establish title by prescription must have been done under a *bona fide* claim of right. *Boyd* v. *Woolwine,* 40 W. Va. 282; *Rogerson* v. *Shepherd,* 33 W. Va. 307. That any such claim existed on the part of Vale is completely negatived by the circumstances. He was a party to the deed and fully cognizant of its purpose, as well as the reasons for allowing temporary gates. While they stood across the roads, a deed was executed by him and others owning them which plainly required their removal. Full explanation of the non-removal thereof, immediately after the date of the deed, is found in the peculiar circumstances already adverted to. The roads were established by the deed to facilitate sales of property and induce people to establish homes in the community, and in contemplation of a largely increased number of users. The accomplishment of these purposes would shift the burden of fencing from the parties to the deed to others, distribute it among a larger number, reduce the area of agricultural land, and increase the travel on the roads to a point not reasonably consistent with the maintenance of gates thereon.

Failure to make Brackett and Lightner parties to the bill is assigned as a ground of demurrer, but they were obviously not necessary parties. Though they were parties to the deed and hold the legal title to the strips of land constituting the roads, their interest as such fee owners is not at all involved in this controversy, relating to an obstruction of the use of the roads and constituting a private nuisance to any person having the right to use them.

Perceiving no error in the decree, we affirm it.

*Affirmed.*