# CHARLESTON.

## AGNES R. WARREN et als. v. J. O. BOGGS et als.

### Submitted October 15, 1918. Decided November 15, 1918.

1. COMPROMISE AND SETTLEMENT—*Suit for Share of Royalty—Stipulations—Conditions Precedent to Suit.*

    Although the parties may agree in writing- compromising their claims to real estate that, should it thereafter be ascertained that any well producing oil has theretofore been drilled on a certain parcel of land, part of the royalty reserved in the lease and paid to one of them shall be refunded to the other, the stipulation does not, in the absence of terms expressly indicating or necessarily implying an intention to create a condition precedent to the maintenance of a suit or action to recover such share of the oil royalty or to require an accounting therefor, inhibit such proceeding until the well is located definitely, either by the joint action of the parties or by judicial inquiry instituted solely for that purpose. (p. 95).

2. PARTITION—*Equity—Jurisdiction—Agreement of Parties—Location of Well.*

    Where by such compromise agreement and pleadings the parties have definitely determined the title and boundaries of the land involved, equity is not deprived of its jurisdiction in a partition suit to determine the location of a well in another tract outside of such boundaries, as the location may readily be ascertained by a competent surveyor. (p. 95).

3. SAME—*Location of Well—Determination.*

    In such case the correctness of the ex parte location may be put in issue by the adversary party and the issue determined in the equitable proceeding. (p. 95).

4. SAME—*Equitable Jurisdiction—Tenancy.*

    Equity alone has jurisdiction to partition personal as well as real property held by cotenants under a common ownership. (p. 96).

5. SAME—*Oil Royalty—"Personal Property."*

    Royalty in oil brought to the surface is personal property and as such is susceptible of partition among its co-owners. (p. 96).

6. DISCOVERY—*Necessity—Equity.*

    A bill alleging a cause cognizable in equity and praying also for discovery in aid of the relief sought need not show the discovery to be indispensable for lack of other proof, though the converse is true where the discovery is the sole ground of equitable cognizance of the cause pleaded. (p. 98).

7.　EQUITY—*Jurisdiction—Remedy at Law.*

　　To deny equity jurisdiction because of a remedy at law, the legal remedy must be adequate to the demands of the particular case, and as full, complete and efficacious as that given in equity, and must not leave open for future litigation matters really and substantially involved.　(p. 98).

Appeal from Circuit Court, Roane County.

Bill by Agnes R. Warren, who sues, etc., and others, against J. O. Boggs and others. From a final decree dismissing upon demurrer the original, amended, and supplemental bills, plaintiffs appeal, and move to reverse decree.

*Reversed, and remanded.*

*Harper & Baker* and *Pendleton, Mathews & Bell,* for appellants.

*V. B. Archer, C. N. Matheny* and *Geo. F. Cunningham,* for appellees.

LYNCH, JUDGE:

This case is before us upon appeal from a final decree dismissing upon demurrer the original, amended and supplemental bills, and upon a motion to reverse made pursuant to amended section 26, ch. 135, Barnes' Code 1918. Among the objects sought through the instrumentalities of the pleadings is the specific performance of a written compromise contract dated May 12, 1913, in relation to a controversy in respect of the ownership of a tract of 94 acres of land located in Roane County, formerly claimed to be owned by George B. Warren, who died intestate October 7, 1899. Surviving him were Margaret B. Warren, his widow, and Thomas B. Warren, Myrtle Leatherberry, Walter Warren, Lizzie Warren, Eula I. Warren, Harry H. Warren, Mary A. Warren and George Foster Warren, his only children and heirs at law, some of whom then were mere infants. Thomas B. Warren died intestate December 21, 1899, and surviving him were Maude Warren, his widow, who also died soon thereafter, and Agnes R. Warren, their only child, an infant.

The land involved, originally two tracts, was sold November 27, 1902, for the nonpayment of taxes assessed in the name of George B. Warren, and purchased by H. F. Goff

who obtained a tax deed therefor on January 29, 1906, and on the same date Goff conveyed the title to the defendant J. O. Boggs, who, together with his wife M. M. Boggs, leased to the Carter Oil Company for oil and gas purposes the 94 acres, together with other lands owned by the husband, covering in all 190 acres. In April, 1913, Mary A. Warren and George Foster Warren, claiming the right to redeem their interest in the land from the tax sale, within one year after arriving at 21 years of age conveyed their interests to A. G. Mathews, who, together with Agnes R. Warren, the infant plaintiff, by Walter Pendleton, her next friend, immediately notified the lessors and lessee in the oil and gas lease of their claim of right to redeem the land from the delinquency under the provisions of sec. 30, ch. 31, Barnes' Code 1918.

In part overlapping and in part outside of the 94 acres is an 18-acre parcel of land also covered by the lease to the Carter Oil Company. In a compromise agreement entered into May 12, 1913, the infant plaintiff by her guardian, Walter Pendleton, and his coplaintiff, A. G. Mathews, through whom Pendleton, Mathews & Bell, a partnership, and Harper & Baker, a partnership, acquired interests in the royalty oil and gas rentals reserved in the lease, concede the superiority of Boggs' title to the 18 acres. And therein Boggs and wife release to the infant plaintiff and to A. G. Mathews an undivided seven-eighths of the oil royalty and gas rentals so reserved "which shall hereafter (thereafter) arise or accrue or be produced from" the 94 acres exclusive of the area thereof within the exterior boundaries of the 18-acre tract, the geometrical courses, distances and monuments demarking the 18 acres being clearly defined and set forth, but not the courses, distances and monuments of the actual interference. And thereby A. G. Mathews and his wife Mattie and Agnes R. Warren, by her guardian, release to J. O. Boggs all claim to any part of the surface of the 94 acres, and ratify the Boggs' lease to the Carter Oil Company, provided that company shall on that part of the 94 acres not embraced within the boundary of the interlock drill the proper number of wells to offset the wells drilled by the same company on other

lands leased to it by Boggs and wife. The parties to the contract mutually agree to execute and deliver proper and necessary deeds to effectuate the object and purposes of the agreement, and Pendleton as such guardian to institute and prosecute in the circuit court of Roane County to finality such proceeding as will procure authority to grant, and when procured to grant, to J. O. Boggs the surface rights of Agnes R. Warren in and to the 94-acre tract.

The bills assert complete compliance by the plaintiffs with these provisions and conditions, the only provisions and conditions of the contract essential to an accurate understanding of the issues involved, except 'those contained in the seventh and eighth paragraphs, which we quote at length:

"Seventh: It is further understood that should it hereafter be ascertained that any well producing oil has heretofore been drilled on said tract of 94 acres of land, outside of the interlock of said 18-acre tract of land, the royalty of which has been paid to the said J. O. Boggs, then the said J. O. Boggs agrees and binds himself to account to the said A. G. Mathews and Walter Pendleton, Guardian, for the seven-eighths of said royalty oil which may have been received by him."

"Eighth: It is understood that this agreement is a full settlement and compromise of all the matters in difference between the parties hereto on account of the said 94-acre tract of land, and of all questions connected therewith or arising therefrom, and that the parties hereto shall sign all proper and necessary division orders and transfer orders to the end that the royalty oil produced from said tract of land may be sold by the parties hereto, according to their respective interests as hereinbefore set out."

Another object to be achieved through this litigation, in addition to the specific enforcement of the compromise agreement, and as a foundation for such relief, is a discovery and disclosure by the defendants Carter Oil Company and Eureka Pipe Line Company of the quantity of oil produced from well No. 5 and delivered into the pipe line to the credit of J. O. Boggs as and for the one-eighth royalty reserved in the lease made by him, the date and the price thereof, and

for partition thereof in kind if the same has not yet been
sold, and, if Boggs has received, sold and disposed·of the roy-
alty, that he be required to account to the plaintiffs for sev-
en-eighths thereof with interest; and as a further purpose
that the court fix the rights and interests of the parties en-
titled to share in the oil hereafter to be produced from said
well, in order, it is claimed, to prevent a multiplicity of suits
in the future.

The foundation and necessity for this information rests
first upon that provision of the contract which requires
Boggs to account to the infant plaintiff and to Pendleton,
Mathews & Bell and Harper & Baker for a stipulated seven-
eighths of the oil royalty from any well drilled on that part
of the 94 acres not within the admitted interlock, such being
the location of well No. 5 according to the allegations of
the pleadings.  The defendants Carter Oil Company and
Eureka Pipe Line Company answered the original bill and
undertook to comply with its demand for discovery as to the
production of the well, but plaintiffs by an amendment vir-
tually expressed a measure of dissatisfaction with the dis-
closure, which the respondents conceded was only approxi-
mately correct because of the admixture of the oils from other
wells on the tract, and for this reason plaintiffs renewed their
demand for discovery in the amended bill, and also prayed
that the two defendant corporations be required to account
to plaintiffs for their shares of the oil royalties; and intro-
duced as defendant A. H. Salisbury.

The demurrer, sustained, was grounded for the most part
upon the theory of a complete and adequate remedy at law
and of the insufficiency of the allegations as to the exact lo-
cation of well No. 5, whether on the 94 acres exclusive of
the interlock or on the interlock.  There has not been a judi-
cial determination of the situs of the well as between the
larger and smaller tracts, nor an ascertainment thereof by
the joint action of the interested parties.  But plaintiffs do
allege that by accurate surveys made at their instance and
request by different surveyors at different times it was ''as-
certained'' within the purport and meaning of the seventh
paragraph of the contract that the well was on that part of

83 W. Va.

the 94-acre tract not within the interlock, and with the bill they exhibit and file the surveys and allege the well to be as reported by the surveyors. For the purpose of this inquiry these allegations are taken, indeed admitted, to be true, and if sufficiently pleaded and not denied are sufficient to establish the location of the well according to plaintiffs' claim.

Much of the argument in support of the decree is addressed to the right of the plaintiffs to maintain the suit, first, because the bills do not present a cause for equitable relief, and, second, if they do, plaintiffs cannot maintain the suit until the situs of well No. 5 is ascertained definitely otherwise than by the ex parte action of one of the parties immediately concerned, and to warrant the suit the ascertainment should result from the joint action of the parties or by a judicial proceeding instituted and prosecuted to final determination solely for that purpose. These propositions we will consider and dispose of in the inverse order, first considering the second, because, though if either is sustained and approved it will justify the decree, the first seems to be more, and the other less, significant, as we view them.

To adopt the second as meritorious and to give to the word "ascertained" as used in the seventh paragraph of the compromise agreement, the significance contended for by counsel representing defendants, an ascertainment of the exact situs of well No. 5 is a condition precedent to the right of the plaintiffs to institute or prosecute this or any other suit to obtain the relief sought by them. Of course the location of that well is material and necessary as the first step in determining the rights of the parties. In this sense and in this sense only is the location a condition precedent to the grant of the relief demanded by the plaintiffs. They have no interest in it and can derive no benefit from its production if it is located anywhere on the eighteen acres. Equally plain and indisputable is the fact that they are entitled to share in its production if it is located on the 94 acres outside of the 18-acre interlock. These propositions the parties themselves have by agreement irrevocably fixed and settled

leaving open merely the one question of the well's location as regards the two tracts.

In the determination of that inquiry the parties did not by any declaration or term definitely or inferentially 'manifest an intention to create a condition compliance with which should precede the prosecution of an action or suit instituted to vindicate plaintiffs' right to enjoy the full fruition' of their contract. They inserted no such provision and no such term as warrant the assumption of either as an actual or inferential preliminary requirement. The stipulation is general and comprehensive. The right of the plaintiffs to enjoy the prescribed share of the royalty oil produced from the well became enforcible, whenever and however the location is made to appear, if it is on the 94 acres outside of the interlock, the only limitation being reasonably prompt action on their part. Besides, defendants can suffer no injury or prejudice from the method employed to ascertain that fact, a mere incident although an essential one to the grant of the relief sought against them, as they may in a proper manner put in issue the correctness of the ex parte ascertainment and have that issue determined in this suit, preliminarily to the grant of the relief sought by the pleadings.

Nor is there involved any impediment to the prosecution of the suit due to the lack of jurisdiction in equity to settle title and boundaries of real estate. The parties themselves by the agreement have eliminated these difficulties, if they ever had any potential existence. They have therein definitely set out in detail the metes and bounds and monuments denoting with exactitude the eighteen-acre tract, and the original bill sets forth the source of Boggs' title thereto. The agreement and the pleading preclude the possibility of dispute and denial of title and boundaries to that tract upon demurrer. All that is required is to ascertain by survey, a mere perfunctory act, whether well No. 5 is located on the 94 acres outside of or within the interlock.

To reverse the decree and to sustain their claim to equitable relief plaintiffs in part assert and rely upon their right to have a decree to partition the oil royalty derived from the

well in controversy, an interest conditionally conceded to them by the compromise agreement. They possess and have no interest and do not pretend to claim any interest in the surface of the 94 acres or any part of it, or of the oil contained therein. Their only claim in that respect is to seven-eighths of one-eighth of the oil as and when produced therefrom. Oil in place of course is part of the land in which it is found or from which it is obtained. When brought to the surface and reduced to possession it ceases to be real estate and becomes personal property and as such may be the subject of partition among its joint owners. In this case J. O. Boggs owns one-eighth and Agnes R. Warren, Pendleton, Mathews & Bell, partners, and Harper & Baker, partners, jointly own seven-eighths of the one-eighth royalty oil when brought to the surface of the 94-acre tract excluding the interlocking area. Is royalty oil susceptible of partition among them in kind in proportion to their several interests or shares therein? If so, that fact gives equity jurisdiction.

A joint tenancy or tenancy in common exists where any species of real or personal property is owned by two or more persons jointly, and such is the clear import of secs. 1 and 6, ch. 79, and sec. 18, ch. 71, Code. Such joint ownership of personal property was recognized in 1774 in *Staples* v. *Maurice,* 2 Eng. Reprint 395, the property there involved being leases under the sees of Armagh and Londonderry renewable from time to time as therein provided. "A right of way vested in a number of adjoining and neighboring property owners makes them tenants in common of such way." *Ailes* v. *Hallam,* 69 W. Va. 305. In *Smith* v. *Smith,* 4 Rand. 95, it is said in the syllabus: "Tenants in common of personal estate cannot have partition at common law; and therefore a court of equity is the proper tribunal to decree a partition of it;" the subject matter of the suit being slaves. See also *Julian* v. *Yoeman,* 25 Okla. 448, 27 L. R. A. (N. S.) 618, note and cases cited; 23 Cyc. 483; 7 R. C. L. 817, 819; 20 R. C. L. 741; *Fitshugh* v. *Foote,* 3 Call. 13; 4 Minor Inst. (3rd. Ed.) 1463.

Save by resorting to a court of equity a cotenant cannot have partition of any property whatever its character, as a law court has not jurisdiction to grant him relief. Equity

alone can do so now. Wherefore if the royalty in question is partible as personalty, and such it clearly is, the bills were dismissed improperly, as they did present an equitable claim for relief apart from the discovery prayed. *Peterson* v. *Hall*, 57 W. Va. 535, 539, is in point. In that case were involved, it is true, conflicting claims under conflicting leases, as counsel contend by way of differentiation. But these additional data do not preclude the applicability or destroy the aptness of the citation. "To deny equity jurisdiction," says the opinion, "because of a remedy at law, the legal remedy must not be merely partial, that is, going only to a certain extent of the matters involved; but it must be adequate to the demands of the particular case, and as full, complete and efficacious as that given in equity. It must not be doubtful. It must not leave open for future litigation matters really and substantially involved. What the case under its circumstances requires is a remedy which will at once and finally settle the right of all the parties in the past and future." Besides, there is an analogy between the facts of the cases. Both are based upon demands for an accounting by the operators under the leases and by the pipe line carrier. A careful examination of the case cited reveals it as an appropriate authority to show the correctness of the views herein expressed and the erroneousness of the decree complained of. Nor are we dealing with the condition presented by *Hall* v. *Vernon*, 47 W. Va. 295, cited and relied on by appellee Boggs, a case involving the right to partition oil and gas in place where the ownership of the minerals had been separated from the ownership of the overlying surface. Moreover, as we said, plaintiffs ask to have set apart for them in severalty any royalty oil remaining unsold and in pipe line storage to the credit of Boggs, and such royalties as may hereafter be run into the pipe lines from the well in question, a relief to which they are entitled according to the pleadings, and which relief a court of law is impotent to grant. Their right to this relief is supported also by *Peterson* v. *Hall, supra*. As to the claims for an accounting and for other relief, equity having assumed jurisdiction for one purpose will give full relief in the one proceeding.

The paramount object of the suit is to vindicate the rights, asserted by the bills dismissed, that is, to coerce the defendants Boggs and his wife to do and perform the things they agreed to do, namely, to account to the plaintiffs for seven-eighths of the royalty oil produced from well No. 5, if it is located and drilled as alleged by them and he has sold the entire royalty oil, and, if he has not sold all of it, to sign division orders allotting to them their shares therein, and like orders as to future royalty production, so that plaintiffs may hereafter have complete control of their respective shares without let or hindrance from any source, and also to compel the Carter Oil Company and Eureka Pipe Line Company to regard and respect plaintiffs' rights in such production.

Since, as we have seen, the nature of the suit is such as to give equity jurisdiction, it is not necessary that the bills should allege the indispensability of the discovery and disclosure also demanded by the plaintiffs. Such allegations are necessary only where the discovery and disclosure is the sole ground of equitable cognizance of the cause pleaded, the relief prayed for being merely incidental. Or as said in *Thompson* v. *Whitaker Iron Co.*, 41 W. Va. 574, 580, ''this principle of averring that discovery is indispensable to enable the plaintiff to sustain his demand applies only where his demand is one cognizable at law, not where his demand is of a nature itself entitling him to go into equity.''

This discussion covers fully all questions actually and necessarily involved, though not all that counsel have elected to direct our attention to, and leads to a reversal of the decree and the remand of the cause for further pleadings and proof.

*Reversed and remanded.*