# CHARLESTON.

J. BOWAN KNOTTS v. FRED W. BARTLETT *et als.*

Submitted February 25, 1919.   Decided March 4, 1919.

1. CONTRACTS—*Construction of Written Agreement—Circumstances.*

   Where the language of a written agreement is ambiguous or incomplete, or the purpose contemplated obscure, the court in an endeavor to interpret its meaning and ascertain its subject-matter and purpose will look to the circumstances surrounding the parties at the time they entered into it and the acts done by them in carrying it into execution.   (p. 526).

2. PLEADING—*Suit for Accounting—Bill—Inconsistency—Exhibit.*

   Where a bill alleges the formation of a partnership for the purpose of securing options and leases upon oil and gas properties for oil and gas purposes, and for the actual development and drilling for oil and gas, if deemed advisable and necessary, and also the performance of acts tending to show the concurrence of the parties in such intention, an exhibit filed with the bill, showing an agreement that one of the parties was to pay the traveling expenses of the other in securing such ''option,'' to be taken in the name of the former, and that the net profits were to be divided, when construed in relation to allegations, admitted on demurrer, of acts done pursuant to such agreement, will not be deemed inconsistent therewith.   (p. 527).

3. SAME—*Bill for Dissolution and Accounting—Bill—Exhibit—Demurrer.*

   Where a bill for the dissolution of a partnership and an accounting alleges the formation of the partnership for certain purposes, and acts done thereunder tending to show such to have been the intention of the parties, and an exhibit filed with the bill is not inconsistent therewith, on demurrer it will be taken as true that a partnership for such purposes was formed.   (p. 527).

Appeal from Circuit Court, Marion County.

Bill by J. Bowan Knotts against Fred W. Bartlett and others.   Decree for defendant Bartlett, and plaintiff appeals.

*Reversed and remanded.*

*W. M. Hess,* for appellant.

*L. S. Schwenck, Harry Shaw* and *W. S. Meredith,* for appellees.

LYNCH, JUDGE:

The original and amended bills, dismissed upon demurrer, allege a partnership between plaintiff and defendant, Fred W. Bartlett, for the purpose of dealing in oil and gas leases or "options" covering lands in Marion, Wetzel and other counties of this state and elsewhere, and the exploration or development of the leased premises for these products, if the parties so elect, and the actual and profitable development of some of the lands through operations thereon by sublessees, who also are named defendants, and pray for a decree to require Bartlett to account to plaintiff for his share of the oil wrongfully withheld by Bartlett, and for a disclosure by defendant Eureka Pipe Line Company of the quantity of oil produced from the leasehold estates, and for other relief.

The chief argument in support of the ruling upon the demurrer is directed against the agreement copied into and filed with and made a part of the amended bill, particularly as to its sufficiency to show the formation of the partnership alleged in both bills. This is the contract: "December 13, 1915. I hereby agree to pay J. B. Knotts traveling expenses in securing an option on the Kingley and Burgess oil property, or any other properties; said options are to be taken in my name and the net profits is (are) to be divided. F. W. Bartlett." J. B. Knotts is the plaintiff J. Bowan Knotts, and F. W. Bartlett is the defendant Fred W. Bartlett.

The terms of the contract, apparently a mere memorandum of the agreement, are enlarged by the allegations of the bills, and the allegations are admitted by the demurrer. They disclose the real object of the parties in entering into the agreement, namely, to effectuate a common enterprise upon the terms agreed upon as evidenced by the exhibit. That paper appellee Bartlett would have us interpret to mean only that the parties intended a mere joint enterprise devoted exclusively to the acquirement of options to buy and sell oil properties for profit; Knotts to contribute his time and experience, and Barlett to bear the necessary expense, and both to participate in the net profits realized from the sales. In

answer to that argument it is necessary now to say only that neither party acted upon that interpretation, and it is not consistent with the express declarations of the bills. Among other things the bills allege that "said Bartlett and your orator (Knotts) on the said 13th day of December, 1915, entered into an agreement between themselves forming a partnership, for the purpose of taking, securing and handling options and leases upon oil and gas properties * * for oil and gas purposes and development, and, if deemed advisable and necessary, for the actual development and drilling for oil and gas on such of the leases which they should take or secure, as they should determine to drill and develop, or procure the drilling and development of."

The contracts secured and sublet were leases for the production of oil and gas from lands in Marion County, taken and procured by Knotts in the name of Bartlett as lessee and delivered to him by Knotts, and with reference to which Bartlett acted in subletting them to Carnegie Natural Gas Company upon condition that if oil were produced, as subsequently it was, Bartlett was to have the well or wells upon his reimbursing the operator for the money expended for that purpose, and the operator to have the well or wells upon the annual payment of rentals if gas only were produced. In other words, Bartlett acted in accord with the charges preferred by the bills, the truth of whose allegations he admits. By this admission he also interprets the contract as the plaintiff interprets it.

The word "option" does not necessarily definitely define or limit the business to which the partnership was to be devoted. If it may properly be said to have that effect, yet the parties were competent to give it a wider meaning, as they have done, if what Bartlett actually did may be accepted as indicating such an enlargement. Furthermore, interpreting the contract as he suggests, he cannot now lawfully exclude his partner from participation in the emoluments accrued, if he himself has departed from the strict letter of the contract. If the object was, as he says, to sell the leases, or options if he prefers that word, and divide the profits, he should have adhered to the accomplishment of that

object and not have departed from it. His departure does not justify the wrong complained of or warrant the course pursued by him. For when his acts are construed in connection with the contract, as plaintiff interpreted it in his pleadings, there is concord not discord between them. Conceding the language to be of doubtful import or ambiguous, though it seems clear enough as far as it goes to define the relation of the parties to each other, yet where the parties by their acts and conduct concur in its construction and interpretation, courts regard and give effect to their exposition, when to do so does not violate the rules of law or infringe upon public policy. *Clark* v. *Sayers,* 55 W. Va. 512. This is an often repeated and well established canon of construction.

If Bartlett did not intend to say what the language used means and what he has interpreted it to mean, why did he not make the meaning clear? Why provide for the taking of options in his name if he simply employed Knotts to secure options for him? Many matters are left open by the memorandum, but the door of inquiry into their real meaning is not closed, as counsel would have us believe. It is the duty of a court to ascertain what the parties meant to accomplish, what they had in mind, and, to do so, to give due regard to their intention, their situation, the subject-matter of the agreement, and the method of achieving the object contemplated, unless they themselves have made these things plain. *Heatherly* v. *Bank,* 31 W. Va. 70; *Myers* v. *Carnahan,* 61 W. Va. 414; *Shrewsbury* v. *Tufts,* 41 W. Va. 212.

There can be no doubt of the soundness of the doctrine relied on by appellee Bartlett and quoted from section 1189, Page on Contracts, regarding the repository of the common intention of the parties to a contract reduced to writing and unambiguous in its terms; or of the statement of the law in *Donahue* v. *Rafferty,* 82 W. Va. 535, 96 S. E. 935, regarding the incorporation of an exhibit in a pleading purporting to file it; or in *Board of Education* v. *Berry,* 62 W. Va. 433, and *Freeman* v. *Carnegie Natural Gas Co.,* 74 W. Va. 83, regarding the effect of such exhibits upon the pleading. There is, however, doubt of their applicability to the facts

here presented chiefly for the reasons heretofore given and also in the cases referred to.

In *Donahue* v. *Rafferty* the issue was whether an exhibit filed to show the terms of a sale of real estate by public outcry could be considered as refuting an allegation of title; in *Board of Education* v. *Berry* and *Freeman* v. *Gas Company*, whether in case of discrepancy between them the exhibits controlled the allegations or the allegations the exhibits. Considered upon the uncontroverted, indeed admitted, facts of the instant case, there is no conflict. Nothing in the paper exhibited is inconsistent with or in conflict with any statement contained in the bill. Counsel point us to none. If any existed, the exhibit being the repository of the actual contract would, when properly interpreted, control, as held in the decisions cited. But we see neither conflict nor inconsistency, though apparently the parties interested in the contract do not concur in their interpretation of the paper.

The bill alleges acts done by Bartlett, among others, the granting to the Carnegie Natural Gas Company of drilling rights on the leases obtained by Knotts, and his submission of the agreement to the latter for his approval, all of which, admitted to be true, tend to establish as a fact that the parties did not deal on the basis of a strict construction of the term "option" in the agreement of December 13, 1915, but apparently gave to it a wider scope comprehending either a sale of the leases so acquired or their development when deemed advisable and necessary. In no other way could the profits which were to be divided be obtained. Further, according to the memorandum the labor of the plaintiff was unlimited as to time and territory. He was to acquire leases wherever they could be had. The employment was not confined to any one transaction. His interest did not by the terms of the contract cease because the leases were taken in Bartlett's name or upon the procurement of any particular lease. Any other property on which leases could be obtained by Knotts was within the terms of the contract.

Therefore, having construed the exhibit not to be inconsistent with the express allegations of the bill setting forth the formation of a partnership for the procurement of op-

tions and leases and their development when deemed advisable and necessary, it will be taken as true upon demurrer that a partnership has been formed for the purposes therein set forth. That fact being admitted, it becomes unnecessary to discuss the effect of the cases of *Sodiker* v. *Applegate*, 24 W. Va. 411, *Clark* v. *Emery*, 58 W. Va. 637, and *Tyler* v. *Teter*, 75 W. Va. 217, relied on by appellee. They have bearing only where the formation of a partnership is a disputed question, not, as here, where it is admitted. Upon the trial of the case upon its merits some of the allegations of the bill may be disproved, and then, when the question of the formation of the partnership is a disputed one on the evidence, the cases will have an important bearing.

Under these circumstances shall we say, as counsel contend we must, that Knotts has no rights that equity can or will enforce; that he has an adequate remedy at law, notwithstanding the allegations of the bills and the need of the discovery for which he prays, and must therefore be relegated to a legal forum for the redress of his grievances? To that question, considered in connection with the facts admitted to be true and the law applicable to them as herein enunciated, the only answer is that facts so admitted bring the case within the often reiterated rule that to deny the right to relief in equity, the legal remedy must be equally efficacious and capable of adjudicating once and for all the rights involved. *Warren* v. *Boggs*, 83 W. Va. 89, 97 S. E. 589.

These reasons lead us to direct the entry of an order reversing the decree, and remanding the cause.

*Reversed and remanded.*